**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erika Colon, | No. CV-22-01322-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Erika Colon seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.  BACKGROUND**

Plaintiff was born in December 1979. (Doc. 12-9 at 21.) She has a high school education. (Doc. 15 at 3; Doc. 18 at 2.) Plaintiff was previously employed as a customer service representative, patient scheduler, administrative assistant, and social services aide. (Doc. 12-17 at 28; Doc. 18 at 2.) She alleged the following impairments: fibromyalgia and migraine headaches. (Doc. 12-17 at 20.)

On October 25, 2013, Plaintiff "filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 4, 2013." (*Id.* at 17.) "The claim was denied initially on April 1, 2014, and upon reconsideration on March 10, 2015." (*Id.*) On November 2, 2016, she appeared with her attorney and testified at a hearing before the ALJ. (*Id.*) A vocational expert also testified. (*Id.* at 17.) On March 16, 2017, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*; Doc. 12-3 at 27.) On March 19, 2018, the Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. (Doc. 12-17 at 17.) Plaintiff "appealed the Appeals Council denial to the U.S. District Court," which reversed and remanded the ALJ's decision. (*Id.*)

On July 31, 2020, the ALJ determined again that Plaintiff was not disabled pursuant to "sections 216(i) and 223(d) of the Social Security Act." (*Id.* at 29.) Plaintiff's claim was also denied by the Notice of Appeals Council Action dated June 7, 2022. (Doc. 1 at 2.) Plaintiff sought review by this Court on August 5, 2022.

## II.    STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Claims that are not actually argued in an appellant's opening brief are not considered on appeal. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Only issues that are argued specifically and distinctly in a party's opening brief are reviewed. *Id.* Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere

scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir.2005)). It is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the "court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006)). Generally, "when the evidence is susceptible to more than one rational interpretation, [courts] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is 'highly deferential.'" *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (*quoting Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

### III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS[1]

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022, and that she has not engaged in substantial gainful activity since October 4, 2013. (Doc. 12-17 at 20.) At step two, the

---

[1] At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

ALJ found that Plaintiff has the following severe impairments: fibromyalgia and migraine headaches. (*Id.*) At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* at 22.) At step four, the ALJ found that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR. 404.1567(a) except: The individual would be limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing on ramps and stairs. The individual must avoid occupations that require climbing on ladders, ropes[,] and scaffolds and cannot be exposed to dangerous machinery and unprotected heights." (Doc. 12-17 at 23.) The ALJ further found that Plaintiff is capable to perform "past relevant work as a customer service representative, patient scheduler, social service aid, and administrative assistant. Th[e] work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." (*Id.* at 28.) At step five, the ALJ concluded that Plaintiff "is able to perform customer service representative and patient scheduler as actually and normally performed; social service aide as actually performed and administrative assistant as normally performed." (*Id.* at 29.)

## IV.  ANALYSIS

Judge Tuchi reversed and remanded the ALJ's March 2017 decision for two reasons: "the ALJ committed legal error when she (1) gave an insufficient reason for rejecting the opinion of treating physician Dr. Ramina Jajoo and (2) improperly discredited the lay witness testimony." (Doc. 12-18 at 25.) Judge Tuchi explained that "the ALJ seemingly made an arbitrary decision to only discuss Dr. Jajoo's August 2012 opinion but not even mention Dr. Jajoo's treatment notes or her October 2013 or December 2013 opinions." (*Id.* at 21.) Furthermore, the three reasons provided by the ALJ for assigning no weight "to the lay opinions of Plaintiff's friends and family members"— (1) "their opinions . . . were unsupported by Plaintiff's physical examinations; (2) they were not

medically trained; and (3) some lay witnesses had a 'pecuniary interest' in Plaintiff's claim"— were not valid reasons. (*Id.* at 24.)

Below, the Court reviews the ALJ's July 2020 decision in regard to Dr. Jajoo's medical opinion and the lay opinions of Plaintiff's friends and family members. Because the ALJ slightly changed her reasoning for discrediting Plaintiff's symptom testimony, the Court also reviews the ALJ's credibility finding. The Court, however, does not address Vocation Expert Jeff Komar's November 2, 2016 testimony because Plaintiff failed to raise the issue in her May 2018 opening brief before Judge Tuchi although the testimony was relied upon in the ALJ's March 2017 decision. *Compare* (Doc. 12-3 at 26–27)*, with* (Doc. 12-17 at 29); *see Indep. Towers of Wash.,* 350 F.3d at 929 ("[W]e will not consider any claims that were not actually argued in appellant's opening brief."). Thus, the matter was not considered on remand to the Social Security Administration.

**A.   The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.**

**1.   Legal Standard**

Generally, the opinion of a treating physician should be given more weight than the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Orn*, 495 at 632 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinion of a specialist about medical issues related to his area of specialty than to the

opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(c)(5). The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.2002)).

### 2. Dr. Ramina Jajoo

Dr. Ramina Jajoo and Candace Nebrich PAC at Arizona Arthritis and Rheumatology Associates P C. treated Plaintiff for fibromyalgia. (Doc. 12-12 at 2–41.) In regard to Plaintiff's work ability, on August 14, 2012, Dr. Jajoo opined that Plaintiff "may need to be off work up to 7 days each month to rest and seek treatment" when Plaintiff's fibromyalgia flares. (*Id.* at 180.) On October 28, 2013, Dr. Jajoo provided a medical opinion that Plaintiff's fibromyalgia would preclude Plaintiff from working from October 2013 until April 2014 because Plaintiff's fibromyalgia was "not well controlled despite several medications tried." (*Id.* at 10.) Dr. Jajoo further explained that an increase in stress and activity can cause fibromyalgia flares. (*Id.*) At a follow up visit in December 2013, Dr. Jajoo extended the amount of time Plaintiff needed off work from April 2014 to June 2014 because there was a "need to try [and] get [fibromyalgia] under better control." (*Id.* at 40.)

To reduce Plaintiff's pain and depression as a result of fibromyalgia flares, Plaintiff was prescribed Cymbalta, Savella, Lyrica, Vicodin, and Percocet at different moments during Plaintiff's treatment. (*Id.* at 13.) Plaintiff also gave "herself Toradol injections at home." (*Id.*) In November 2013, Dr. Jajoo stop prescribing Percocet to Plaintiff because Plaintiff "had 3 prescriptions for Percocet from 3 different physicians" within four months. (*Id.* at 20.) Moreover, Dr. Jajoo proposed "[i]t is possible that [Plaintiff] may be having so many migraines because [Plaintiff] is having withdrawal from narcotics, or even headaches induced by narcotics." (*Id.*)

The ALJ gave Dr. Jajoo's opinion "little weight" and found that the opinion was "inconsistent with the evidence as a whole." (Doc. 12-17 at 26.) The ALJ took "notice that Dr. Jajoo's August 2012 opinion was assessed prior to the [Plaintiff's] onset date." (*Id.*) Further, the ALJ determined that there was "no evidence in the record documenting monthly flares lasting seven days. Further, physical examinations performed by Dr. Jajoo and other providers at Arizona Arthritis and Rheumatology are inconsistent with disabling symptoms." (*Id.*) Likewise, according to the ALJ, Dr. Jajoo's October and December 2013 medical opinions were inconsistent with the record, specifically, "physical examinations show generally normal findings." (*Id.*) In addition, the October and December 2013 medical opinions were "conclusive and vague as they fail[ed] to list any specific functional limitations." (*Id.*) Finally, the ALJ reasoned that Plaintiff's "urine toxicology revealed she was not taking her prescribed medications, indicating [Plaintiff's] reported symptoms were not as severe as alleged." (*Id.*)

Here, the ALJ gave "specific and legitimate reasons" for discounting Dr. Jajoo's opinion about Plaintiff's inability to work. *See Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725)). First, Dr. Jajoo's 2012 and 2013 opinions rested partially on the belief that the prescribed medications were not helping to keep Plaintiff's fibromyalgia under control. (Doc. 12-12 at 10, 40.) In the past, however, Plaintiff's "urine toxicology was questionable and inconsistent with the medications prescribed." (*Id.* at 20.) Additionally, some of Plaintiff's headaches or migraines may have been self-induced due to Plaintiff violating her Narcotics Agreement with Dr. Jajoo and being prescribed Percocet three times from three different physicians in approximately three to four months. (*Id.*) Second, as the ALJ noted, Dr. Jajoo does not corroborate her conclusion with evidence that Plaintiff has ever required seven days off from work due to fibromyalgia flares. (Doc. 12-17 at 26.) Third, physical examinations conducted by Dr. Jajoo and Nebrich show that Plaintiff maintained full range of motion of all joints although Plaintiff's record show more than 11 positive fibromyalgia tender points. (*Id.*)

Thus, the ALJ did not err in giving little weight to Dr. Jajoo's medical opinion because Dr. Jajoo's own treatment notes and other medical notes are inconsistent with Dr. Jajoo's opinion. *See Batson*, 359 F.3d at 1195 (affirming ALJ's rejection of treating source opinion for being inconsistent with treatment notes and other evidence of record). The Court finds that substantial evidence supports the ALJ's conclusion to give Dr. Jajoo's opinion little weight.

**B.    The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.**

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms. SSR 96-7p, 1996 WL 374186 (July 2, 1996). Then the ALJ must make a finding on the credibility of the claimant's statements about symptoms and their functional effects. *Id.*

"In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis": (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To ensure meaningful review, the ALJ must "specifically identify the testimony [from a claimant]" the ALJ "finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.2001))

(alteration in original). "General findings are insufficient." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995)). The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 at 958; *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In making a credibility determination, an ALJ "'may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.1991)). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.* Further, the claimant is not required to produce objective medical evidence of the symptom or its severity. *Garrison*, 759 F.3d at 1014. The ALJ must consider all of the evidence presented, including the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; effectiveness and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the claimant uses to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Here, Judge Tuchi found that the ALJ erred when she (1) "failed to consider the longitudinal record . . . and instead relied on the normal findings of Plaintiff's physical examinations to discredit Plaintiff's testimony regarding her fibromyalgia" (2) relied "on Plaintiff's statements that she had her symptoms had improved periodically to argue her testimony was not credible." (Doc. 12-18 at 23) (internal citations omitted.) Judge Tuchi agreed, however, that the ALJ listed three clear and convincing reasons for discounting Plaintiff's testimony: (1) "evidence that Plaintiff was engaged in 'prescription narcotic seeking' behavior; (2) evidence that Plaintiff exaggerated her weight loss; and (3) the

ALJ's observations that Plaintiff's ability to concentrate and answer questions at the hearing conflicted with her reported limitations." (*Id.*) (citing Doc. 12-3 at 23–25.)

On remand, the ALJ again discredited Plaintiff's pain severity report because of Plaintiff's substance abuse with prescription narcotic seeking during treatment. (Doc. 12-17 at 24.) Further, the ALJ relied on the longitudinal treatment record, Plaintiff's daily activities—driving, shuffling papers, shopping online, and exercising—, and lack of medical opinions indicating that Plaintiff is disabled. (*Id.* at 24–26.)

"[T]he evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision . . . ." *Thomas*, 278 F.3d at 954. Thus, the Court finds that the ALJ provided clear and convincing reasons for rejecting Plaintiff's claims.

## C. The ALJ Did Not Err in Weighing the Lay Opinions of Plaintiff's Family and Coworkers.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006). "When an ALJ discounts the testimony of lay witnesses, [the ALJ] 'must give reasons that are germane to each witness.'" *Valentin*, 574 F.3d at 694 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). "Inconsistency with medical evidence is one such reason." *Bayliss*, 427 F.3d at 1218.

Here, the ALJ gave partial weight to the husband's opinion and found that the opinion "supports some restriction of the [Plaintiff's] ability to perform daily activities but not to the extent reported by [Plaintiff's] husband." (Doc. 12-17 at 27.) The ALJ gave little weight to the opinions of Plaintiff's supervisor, mother, children, employer, and coworker because the statements were "not persuasive of additional restrictions in the" residual functional capacity assessment, "not supported by the medical evidence of record," or "vague." (*Id.* at 27–28.) Plaintiff's brother's opinion was also given little weight because "whether an individual is able to work is an issue reserved for the Commissioner and opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." (*Id.* at 27.) The ALJ "acknowledge[d] that

[Plaintiff] has some resulting physical limitations . . . [but] are not significant enough to preclude all employment." (*Id.* at 28.)

The ALJ accepted the testimony of Plaintiff's family and coworkers that was consistent with the record of Plaintiff's activities and the objective evidence in the record. The ALJ rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 29th day of January, 2024.

G. Murray Snow
Chief United States District Judge